IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,          :

    Plaintiff,                                  :

vs.                                                   :          CA 06-00505-CB-C

KENNETH M. STABLER, et al.,        :

    Defendants.                             :

## REPORT AND RECOMMENDATION

This matter has been referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on a motion to enforce a settlement agreement (Doc. 115), asserted by defendant Kenneth M. Stabler against defendant Rose Burch Stabler. After a thorough review of the record, having the benefit of an oral argument and the parties' briefs, it is determined that Mr. Stabler's motion should be **GRANTED** and the settlement enforced for the following reasons.

**I. Factual Background/Procedural History**

In August of 2006, the United States initiated the current action in order to recover "certain unpaid tax assessments" of Kenneth Stabler and Stabler Company, Inc., to foreclose federal tax liens, and to secure the sale of two real estate holdings of Mr. Stabler, referred to as the "Joachim property" and the "Ono property." (Doc. 121, p. 2.) The sale of the

1

Joachim property was not disputed, and so Senior Judge Charles R. Butler of this court entered a consent order regarding the same on August 12, 2008. (Doc. 105.)

The dispute around the settlement of this case, then, concerns the Ono property. After reaching an initial impasse in negotiations concerning the Ono property, the parties jointly moved this court to order a settlement conference to resolve matters relating to its foreclosure and sale. (Doc. 101.) After the parties filed this joint motion, Judge Butler referred the matter to the undersigned, and a settlement conference was set for August 20, 2008. (Doc. 102).

At that August 20, 2008, settlement conference, which lasted about five hours, all parties agreed to the terms under which the Ono property would be sold. (Doc. 121, p. 2.) There, the parties summarized their agreement with a written outline and, in the presence of the undersigned, dictated the terms of their agreement into the record. (*Id.*) At that time, the undersigned asked all parties if they understood and accepted the agreement, and all parties indicated their response in the affirmative. (Transcript of Settlement Conference, p. 13.)

Following that settlement conference, on September 12, 2008, United States counsel sent electronic and hard copies of the settlement documents (including the consent order for the sale of the Ono property) to

all parties so that they could sign and return them to her by September 18, 2008. Mrs. Stabler has, however, failed to execute these settlement documents and in fact expresses a refusal to do so, prompting Mr. Stabler's current motion. (*Id.* at 4; Doc. 123.) The United States has entered a memorandum in support (Doc. 121) of Mr. Stabler's motion to enforce the settlement agreement of August 20, 2008, in order to "avoid unnecessary time and costs to further litigate this matter." (Doc. 121, p. 4.)

Mrs. Stabler, on the other hand, maintains that she was misled during the oral settlement agreement of August 20, 2008, and would have the court amend its terms. (Doc. 123, p. 8.) Says Mrs. Stabler: "I do not want, nor did I ever agree for my children's lifetime home to be foreclosed upon, thus insuring a traumatic event for my children and [a] very low sales price for me." (*Id.*) Mrs. Stabler additionally feels that "[f]or all of the parties in this case, this case represents just another day at work, including Mr. Stabler. However, for me[,] my home is at stake in this case[,] along with the bulk of my life savings." (*Id.* at 10.)

## II. DISCUSSION

### A. The Jurisdictional Issue

The requisite jurisdictional analysis involving the instant

matter before the undersigned has been handily summarized by the Eleventh Circuit: "A district court has jurisdiction to enforce a settlement agreement, at least when a party refuses to comply with the agreement before the case has been dismissed." *Kent v. Baker*, 815 F.2d 1395, 1398 (1987). In the instant matter, then, there is no need to enter into a jurisdictional analysis, as the case has not been dismissed.

**B.  Alabama Law Governs the Settlement Agreement**

The Eleventh Circuit has also stated that the determination of whether or not the parties have entered into a valid settlement agreement is governed by state contract law, in *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1253 (1999). *See also Blum v. Morgan Guar. Trust Co. of New York*, 709 F.2d 1463, 1467 (11th Cir. 1983); *Bailey v. Mead Southern Wood Products*, 295 F.Supp.2d 1286, 1288 (M.D.Ala. 2003) ("The [Alabama] law of contracts governs the construction and enforcement of [the] settlement agreement in this case.").

**C.  The Alabama Law on Contracts**

**i.  Oral Settlement Contracts as Enforceable**

As the court stated in *Ulliman Schutte Const., Inc. v. Emerson Process Management Power & Water Solutions*, 2007 WL 1794105 (D.D.C.), "As an initial matter, it should be noted that the purported

settlement agreement in this case is wholly oral. Thus the question of whether oral contracts are enforceable at all under the body of contract law of the [relevant] jurisdiction may be a dispositive threshold issue." *Id.* at *4. A federal case from Alabama answers this question, *Spurlock v. Pioneer Financial Services, Inc.*, 808 F.Supp. 782 (M.D.Ala. 1992). There, the court experienced confusion regarding whether Rule 47 of the Alabama Rules of Appellate Procedure,[1] requiring that a settlement agreement be in writing and "signed by the party bound thereby," or section 34-3-21 of the Alabama Code,[2] which does not require the parties' signature, controls the disposition of settlement agreements in Alabama's federal courts. *Id.* at 783. Although the *Spurlock* court came to the conclusion that "it would seem that Rule 47 would govern settlement agreements while the matter is on appeal, while section 34-3-21 would govern settlement agreements reached while the case is still at the trial level," this distinction is irrelevant

---

[1] Rule 47 states:

> No private agreement or consent between the parties or their attorneys relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be in writing and signed by the party to be bound thereby; provided, however, that agreements made in open court or at pretrial conferences are binding, whether such agreements are oral or written.

[2] Section 34-3-21 of the Alabama Code states that an attorney "has the authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court."

as it relates to the situation before the undersigned, as both authorities recognize that an oral settlement agreement is valid if entered into before the court. *Id.*

The decision of *Ingalls Iron Works Company v. Ingalls*, 177 F.Supp. 151 (N.D.Ala. 1959) supports *Spurlock*'s statements. In *Ingalls*, "a stipulation was made in open court and spread upon the record" regarding "full settlement" of the appellant's cause of action and the respondent's reciprocal agreement to pay that sum. *Id.* at 160. Said the *Ingalls* court regarding the oral settlement agreement: "Such a stipulation should be as binding as a written contract; indeed, it is a contract[,] but made with more solemnity and with better protection to the rights of the parties than an ordinary contract made out of court." *Id.* (quoting *Fair Mercantile Co. v. Union-May-Stern Co.*, 221 S.W.2d 751, 755 (Mo. 1949)).

### ii. Ambiguity

The first issue one should look for when deciding whether to uphold a contract in Alabama is whether the contract is ambiguous on its face. According to the Supreme Court of Alabama, "the circumstances surrounding [a given] contract are considered only where the terms are ambiguous," and therefore "evidence of the parties' intentions or course of dealing" comes secondary to the substance of the contract itself. *Reeves Cedarhurst Development Corp. v. First Amfed Corp.*, 607 So.2d 184, 187

(1992) (quoting *United States Fidelity & Guaranty Corp. v. Elba Wood Products, Inc.*, 337 So.2d 1305, 1308 (Ala. 1976)).

*Reeves* continues to point out that "[w]hether a contract is ambiguous is a question of law for the trial court to determine." *Id.* at 186 (quoting *P&S Business, Inc. v. South Central Bell Tel. Co.*, 466 So.2d 928, 931 (Ala. 1985)). When interpreting a contract, the words of the agreement will be given "their ordinary meaning." *Id*. (quoting *Hibbett Sporting Goods, Inc. v. Biernbaum*, 391 So.2d 1027, 1029 (Ala. 1980)). "An instrument is unambiguous if only one reasonable meaning clearly emerges." *Id.* (quoting *Vainrib v. Downey*, 565 So.2d 647, 648 (Ala.Civ.App. 1990)). "The presence or absence of ambiguity must be discerned from a study of the contract as a whole, giving undefined terms their ordinary, plain, and natural meaning unless there is sufficient evidence [that] a different meaning was intended." *Paul Revere Life Ins. Co. v. Kick*, 2001 WL 1049224, *4 (S.D.Ala.) (quoting *Southland Quality Homes, Inc. v. Williams*, 781 So.2d 949, 953 (Ala. 2000)). Furthermore, "[i]f the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment,"[3] although "if the

---

[3] In fact, "[i]f a contract is unambiguous on its face, there is no room for construction and it must be enforced as written." *Kick*, 2001 WL 1049224 at *4 (quoting *Williams*, 781 So.2d at

terms within the contract *are* ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury." *Reeves*, 607 So.2d at 186 (emphasis added) (quoting *McDonald v. U.S. Die Casting & Development Co.*, 585 So.2d 853, 855 (Ala. 1991)). Finally, the Supreme Court of Alabama has made a point of the fact that "just because the parties allege different constructions of an agreement . . . does not necessarily mean that the agreement is ambiguous." *Yu v. Stephens*, 591 So.2d 858, 859 (Ala. 1991).

### iii.  Other Considerations

The Supreme Court of Alabama also provides guidance for the next step of the inquiry, which again is reached only if the court deems the contract to be ambiguously termed.  "The cardinal principle in the interpretation of any contract," the Court tells us, "is that the intention of the parties should control." *Elba Wood Products*, 337 So.2d at 1307 (quoting *Alabama Farm Bureau Mutual Casualty Insurance Company v. Goodman*, 279 Ala. 538 (1966)).  *Elba* next tells us that when determining the intent of the parties, "the terms are to be taken in their plain, ordinary

---

953).  *See also American Farm Bureau Federation v. Alabama Farmers Federation*, 935 F.Supp. 1533, 1544 (M.D.Ala. 1996) ("Where a contract is unambiguous and plain in expression . . . no canon of construction . . . warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair.  Where the parties express without ambiguity their intention, no court can alter the agreement and no room for judicial construction is left.")

and popular sense if they are clear and unambiguous and have not acquired a technical meaning." *Id*. (citing 43 Am.Jur.2d, § 265 at 324; *Franklin Life Ins. Co. v. Lewis*, 36 Ala.App. 313 (1951); *Universal Underwriters Ins. Co. v. Marriott*, 286 Ala. 231, 238 (1970)). Although this consideration may be absent from the current situation regarding an oral contract, "[i]f doubt arises to the meaning of the terms used, then they will be interpreted against the party who has drawn the contract." *Id*. at 1308 (citing *Trans-Continental Mutual Insurance Company, Inc. v. Harrison*, 262 Ala. 373 (1955); *State Farm Mutual Automobile Insurance Co. v. McInnish*, 284 Ala. 492 (1969)).

Finally, both the United States and Mrs. Stabler argue that two unpublished Eleventh Circuit cases are important to the disposition of this matter, *Clough Marketing Services, Inc. v. The Main Line Corp.*, 2008 WL 2315876 (11th Cir. 2008) and *Jackson v. Con-Way Transp. Services, Inc.*, 222 Fed.Appx. 887 (11th Cir. 2007).[4] Both Mrs. Stabler and the United States cite to *Jackson* for the proposition that "Alabama courts have found consent to a settlement agreement where there is evidence that a party is informed of the terms of the settlement agreement and agrees to it," but the

---

[4] The Eleventh Circuit provides by rule that unpublished opinions are not considered binding precedent, but may be cited as persuasive authority. Eleventh Circuit Rules, Rule 36-2, 28 U.S.C.A. In this instance, the undersigned finds that the language from *Clough* and *Jackson* does inform as to the decision rendered in this case.

9

parties disagree with how this statement ought to be interpreted. *Jackson*, *supra*, at 891 (citing *Sayre v. Dickerson*, 278 Ala. 477 (1965)). The United States, after observing Mrs. Stabler's responses during the settlement conference of August 20, 2008 (discussed in greater detail below), argues that Mrs. Stabler was indeed informed of the terms and agreed to them, meaning that the undersigned is compelled to honor the parties' agreement as it existed when it was agreed upon. (Doc. 121, p. 5.)

As she stated before the undersigned during a October 16, 2008 hearing, Mrs. Stabler instead views *Jackson* as providing her with an "out" of the contract, citing the phrase "informed of the terms of the settlement," from the same sentence cited by the United States in its supporting memorandum (Doc. 121). Specifically, Mrs. Stabler claims she was unaware that the settlement agreed to involved the foreclosure of her Ono Island property, despite all parties' reports that the word "foreclosure" was discussed *ad nauseam* for the better part of five hours– and the inclusion of item number 4 in the settlement agreement, that which related to the parties' caution regarding the terms "Internal Revenue Service," "IRS," "foreclosure," and "tax liens." (Transcript of Settlement Conference, p. 8-9.)

Mrs. Stabler's claim that she was misled during the course of the settlement conference is also undermined by the inclusion in the settlement

agreement of item number 2, which after noting the parties' agreement to sell the Ono Island property at a public auction, states: "The parties also agree that Property Appraisal and Liquidation Specialists, otherwise known as PALS, P-A-L-S, all in caps, of the Internal Revenue Service will be authorized to conduct the sale." (*Id*. at 6.)  The Internal Revenue Manual contains the following relevant information regarding PALS:

> Employees of the IRS are authorized to sell property in which the United States brought action *to foreclose a lien* on a taxpayer's property or rights to the property. The cases normally originate from a revenue officer's request for a tax lien foreclosure suit under IRC 7403. In the past, the U.S. Marshal's Service has conducted these sales. The Order of Sale may now stipulate that a Service employee, usually the PALS, may conduct the sale.

Internal Revenue Manual, Part 5, Chapter 10, Section 8, "Judicial Sales," *available at* http://www.irs.gov/irm/part5/ch10s08.html (last accessed Oct. 17, 2008) (emphasis added).

The above considerations also mark as meritless Mrs. Stabler's contention that the settlement agreement be reopened for "accident, mistake or fraud," following *Jackson*, *supra*, at 891.  As fully explained below, the terms of the agreement were agreed to and read into the record in the undersigned's presence, and the undersigned gave Mrs. Stabler ample opportunity to air whatever doubts she may have experienced regarding the agreement.  Likewise, Mrs. Stabler's attempted use of a second case cited

11

by the United States in support of Mr. Stabler's motion to enforce the settlement must also fail.  *Clough*, 2008 WL 2315876, involves the application of Georgia contract law to a Georgian dispute, meaning it is inapposite to the case before the undersigned.  *Clough* states that "the law favors compromise," and that therefore a settlement agreement should be enforced absent a showing that the parties "clearly failed to reach agreement on an essential contract term." *Id.* at *2.  Even if it were a case applying Alabama law, however, the result would still be the same for Mrs. Stabler, as it is clear from the record that the parties *did* reach agreement on every term of the contract, essential or not.

### D.  The Oral Settlement Agreement

After consideration of the foregoing, the undersigned regards the proceedings of August 20, 2008, as a valid oral settlement agreement that has been duly entered into the record.  Although the agreement was "anticipated to be confirmed in writing" on October 1, 2008, it is the undersigned's belief that other parts of the transcript overcome any lingering doubts that the agreement was an enforceable oral contract under Alabama law.  (Transcript of Settlement Conference, p. 3.)

Turning to that document, the undersigned specifically mentioned that the settlement agreement whose terms the parties were relating to the court would be "part of the record," flatly denoting that the oral discussion

embodied in the transcript was being "spread upon the record" like that in *Ingalls*, *supra*, which (as mentioned earlier) supports the undersigned's position that oral contracts made in court are not only enforceable in Alabama, but are favored to written contracts made without. (*Id.* at 4.)

Further, the undersigned specifically referred to the oral proceeding as a "settlement agreement," and repeated the use of that term throughout the conference. (*Id.* at 5, 11.) Just as importantly, the sides felt it necessary to explicitly state that the settlement agreement did not involve "any matters pertaining to the divorce of Kenneth Stabler and Rose Burch Stabler," a legalistic precaution that indicates fairly clearly that the parties did indeed consider themselves bound by the oral settlement agreement. (*Id.* at 11.)

A separate indication that the oral agreement is a valid contract comes from the parties' language when making their statements. Throughout the agreement, the terminology used was that "the parties agree" to various settlement terms, not "the parties *will agree*," which would obviously be a sign that the parties did not consider the proceeding to be binding, but instead believed they would have a later chance to (re)negotiate its terms.

Finally, Mrs. Stabler was asked by the undersigned: "Is this your agreement? Are these terms those that you have reached in this settlement agreement?" to which her response was "Yes, sir." (*Id.* at 13.) The

13

undersigned then asked Mrs. Stabler if she had any questions about the terms of the agreement, and Mrs. Stabler responded: "I have no questions, I just want to stress that item number 4 is extremely important to me to minimize any further embarrassment... [i]t's very, very important to me that item 4 is adhered to." (*Id*. at 13-14.) All other parties also indicated that the terms entered into the record before the court were those that comprised their agreement, and no party indicated the presence of any confusion or doubt regarding its terms. (*Id*.) All parties, then, understood all terms, did not view them as ambiguous, and affirmed their consent to the agreement after it was entered into the record. These important factors overcome any doubt the undersigned may have had regarding the enforceability of the oral contract witnessed on August 20, 2008.

## E.  Conclusion

In sum, Alabama law not only regards the oral settlement agreement that was read into the record on August 20, 2008 at the undersigned's direction as an enforceable contract, but also mandates that the agreement be specifically performed absent a finding of ambiguity. This finding of ambiguity is within the court's discretion, bounded only by the guidance provided by the Alabama cases above. In this respect, the court's latitude over whether a contract is enforceable is free from the opinions of the parties, who are bound by what the court discerns to have been their

14

original intentions regarding the contract.  These intentions were clearly expressed before the undersigned on August 20, 2008, as the oral settlement agreement was being entered into the record, and again when the undersigned ensured that each party fully understood all of its terms.  Therefore, it is the undersigned's recommendation that Mr. Stabler's motion to enforce the settlement agreement of August 20, 2008 be **GRANTED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 2nd day of December, 2008.

                                               s/WILLIAM E. CASSADY  
                                               UNITED STATES MAGISTRATE JUDGE

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                           s/WILLIAM E. CASSADY
                                           UNITED STATES MAGISTRATE JUDGE