**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

UNITED STATES OF AMERICA, )
Plaintiff, )
v. ) CIVIL ACTION NO. 06-0505-CB-C
KENNETH M. STABLER, STABLER COMPANY, INC., ROSE BURCH STABLER, BEAL BANK, S.S.B. and CHASE MANHATTAN MORTGAGE CORPORATION, )
Defendants. )

**ORDER**

This matter is before the Court on the Report and Recommendation of the Magistrate Judge recommending that the settlement agreement entered into by the parties be enforced. (Doc. 140.) Defendant Rose Burch Stabler has filed an objection to the Report and Recommendation. (Doc. 145.) After a review of the record, including de novo consideration of the findings to which objections have been raised, the Court agrees that the settlement agreement should be enforced.

**Procedural Background**

In 2006, the United States brought this action to "obtain a judgment against Kenneth M. Stabler and Stabler Company, Inc. for unpaid federal taxes and to foreclose federal tax liens against certain real properties located in Alabama." (Compl., Doc. 1, ¶ 1.) Specifically, the properties the United States sought to foreclose were 260 N. Joachim Street in Mobile County (the Joachim property) and Lot 58, Ono Island Subdivision, Unit One in Baldwin County (the Ono Island property). Defendants Kenneth M. Stabler and Rose Burch Stabler own the Ono

Island property as joint tenants with right of survivorship. The property became the Stablers' family home when they were married in the mid-1980's, and Mrs. Stabler has lived there continuously since that time. Mrs. Stabler has maintained the Ono Island property since the couple's divorce proceedings began several years ago. Mrs. Stabler is a party to this litigation because of her ownership interest in the Ono Island property, and the parties agree that she is not personally liable for any of the unpaid taxes that are the subject of this lawsuit. Defendants Beal Bank, S.S.B. and New South Federal Savings Bank, respectively, hold the first and second mortgages on the Ono Island property. Defendant Chase Manhattan Mortgage Corporation holds a mortgage on the Joachim property.

Initially, this action was delayed and/or stayed as parties engaged in settlement negotiations. In February 2007, Mr. and Mrs. Stabler filed a joint motion to stay the action for six months so that they could sell the Ono Island property, which was already on the market. The intent was to use a portion of the proceeds to satisfy the tax liabilities that gave rise to this action. The property did not sell within the six-month period, and the parties again requested additional time to obtain a mortgage on the property, proceeds from which would allow Mr. Stabler to satisfy his tax liability. Ultimately, no mortgage was obtained, and this litigation proceeded.

After these initial settlement attempts proved unsuccessful, Mrs. Stabler's attorney was permitted to withdraw. Since that time, Mrs. Stabler had proceeded *pro se*.

At the request of the parties, the undersigned referred this matter to Magistrate Judge Cassady for a settlement conference, which was held on August 20, 2008. After more than five hours of negotiations, the parties reached an agreement, which was reduced to writing and read

into the record. The thirteen-paragraph agreement included the following items. First was the sale of "the Ono Property at public auction with the setting of a minimum bid of $900,000." Settlement Agrmt. ¶ 1. The agreement authorized "the Property Appraisal and Liquidation Specialists ("PALS") of the Internal Revenue Service . . . to conduct the sale." *Id.* ¶ 2. Next, the agreement set an order of priorities for distributing the proceeds that would pay half of the net sale proceeds[1] to Mrs. Stabler and the other half to the IRS to satisfy the unpaid income tax assessments of Mr. Stabler and the Stabler Company. Item four of the agreement stated that "[i]n drafting any consent order or legal publication of notice of sale, the Parties will be sensitive to the use of certain language and will refrain when possible from using terms such as 'Internal Revenue Service,' 'IRS,' 'foreclosure,' 'tax liens,' etc." *Id.* ¶ 4.

After the agreement was read into the record, Judge Cassady carefully questioned the parties about the agreement and its terms.

> JUDGE CASSADY: Okay. Now, let me ask the other parties. Is this your agreement? Are these your terms that you have reached in this settlement agreement? Mrs. Stabler?
>
> MRS. STABLER: Yes, sir.
>
> JUDGE CASSADY: Okay. Do you have any questions about the terms of the agreement?
>
> MRS. STABLER: I have no question, I just want to stress that item number 4 is extremely important to me to minimize any further embarrassment for my children and myself as we're innocent parties/victims to this entire mess. It's very, very important to me that item 4 is adhered to.

Settlement Conf. Tr., Doc. 133-5, 13-14.

According to the agreement, the parties were to submit to the Court a settlement order

---

[1]Net sale proceeds is defined by the agreement as the amount remaining after payment of expenses of the sale and any outstanding property taxes and after satisfaction of both mortgages.

reflecting the agreement the parties had reached on or before September 25, 2008. Counsel for the United States prepared and circulated an order, which Mrs. Stabler refused to sign. Ultimately, Mr. Stabler filed a motion to enforce the settlement agreement, which was referred to Magistrate Judge Cassady for an evidentiary hearing.

**The Evidentiary Hearing**[2]

At the evidentiary hearing, Mrs. Stabler asserted that the settlement agreement should not be enforced because she either misunderstood or was misled as to a material issue, that is, that the sale of the Ono property would be pursuant to a foreclosure. Judge Cassady allowed Mrs. Stabler and counsel for the remaining parties to fill in pertinent factual details from the settlement conference and to address the legal issues raised by the motion to enforce the settlement agreement. While all parties agreed that the word "foreclosure" was discussed extensively at the settlement conference, Mrs. Stabler claimed that the discussion was related to her insistence that she would not agree to a foreclosure. The other participants in the settlement negotiations disputed Mrs. Stabler's claim and pointed to a document used in the settlement negotiations. During the settlement conference, plaintiff's counsel provided Mrs. Stabler a copy of the Order of Sale for the Joachim property so that Mrs. Stabler could revise it to come up with a proposed order of sale for the Ono Island property. Many handwritten additions, deletions and changes were made to that document. Unchanged, however, is the statement in paragraph one, which states that the interest of Kenneth M. Stabler "can be foreclosed." Pl.'s Ex. 2.[3]

---

[2]The evidentiary hearing has not been transcribed. The undersigned has reviewed a digital recording of those proceedings.

[3]This exhibit is among several exhibits submitted at the settlement conference under seal.

At the hearing, Mrs. Stabler stated that she was willing to go through with the sale of the property if two additional conditions were met. First, she needed an additional $100,000 in net proceeds from the sale.[4] Second, she wanted a private auction company she had chosen to conduct the sale.

**The Report and Recommendation**

In his Report and Recommendation, Judge Cassady found that this Court has jurisdiction to enforce a settlement agreement entered into in a case pending before it and that state contract law governs the validity of the agreement. Applying Alabama contract law, Judge Cassady first determined that an oral settlement agreement entered into before the Court is valid and enforceable. Next, he reviewed the evidence and concluded that Mrs. Stabler was informed of the terms of the settlement agreement and agreed to them. Mrs. Stabler argued that the settlement agreement should not be enforced because: (1) she was unaware that the settlement involved a foreclosure of the Ono Island property and, therefore, her consent was invalid because she did not understand all of the terms of the agreement and (2) the agreement should be set aside for accident, mistake or fraud based on her misunderstanding about the foreclosure. Judge Cassady rejected both of these claims because he found the facts did not support them. Specifically, he found that Mrs. Stabler's assertions were undermined by: (1) the parties' repeated use of the word foreclosure throughout the five-hour settlement negotiations; (2) the parties agreement, in item number 4 of the settlement agreement, to minimize the use of words such as "foreclosure," "IRS" and "tax lien;" and (3) the agreement to use the Property Appraisal

[4]According to Mrs. Stabler, after the settlement hearing, she began looking at real estate in the Orange Beach area and discovered that she would need additional money to purchase a suitable residence.

and Liquidation Specialists of the IRS to conduct the auction.

**Standard of Review**

This motion to enforce the settlement agreement was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), which provides the following standard of review:

> Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Mrs. Stabler filed timely objections to the Report and Recommendation. The Court has carefully considered those objections and has reviewed all relevant pleadings as well as the recorded proceedings from both the settlement conference and the motion to enforce the settlement agreement.

**Objections & Analysis**

Mrs. Stabler's objections focus on Judge Cassady's factual findings, specifically his conclusion that she understood that the settlement agreement involved a foreclosure of the Ono Island property. In her objection, Mrs. Stabler raises three points. First, she insists that Judge Cassady was wrong to rely on the parties' use of the word "foreclosure" during the settlement negotiations because the use of the word was due to her insistence that her home *not* go into foreclosure. Second, Mrs. Stabler points to item four of the settlement agreement, *i.e.*, the agreement that the parties would "refrain when possible" from using terms such as "foreclosure," "Internal Revenue Service"–and to her statement at the settlement conference about the importance of that item--as further evidence that a foreclosure was something she was trying to

avoid. Third, she argues that her agreement to use the "Property Appraisal and Liquidation Specialists" of the "Internal Revenue Service" should not be considered evidence that she understood the settlement to include a foreclosure. These objections are without merit.

In the undersigned's opinion, Mrs. Stabler's insistence that she did not agree to a foreclosure is a distinction without a difference. As Judge Cassady points out in the Report and Recommendation, the settlement agreement clearly set forth out the terms of the agreement, which spelled out what was to happen to the Ono Island property. It was to be sold at auction by the Internal Revenue Service. The proceeds were to be used to be paid out in an order of priority. After mortgages were satisfied, Mrs. Stabler would be entitled to one-half of the net proceeds, and the other half of the net proceeds (*i.e.*, Mr. Stabler's half) would be used to satisfy the IRS tax assessments. Though the agreement and Mrs. Stabler's statements at the settlement conference indicate her strong desire to avoid, to the extent possible, the *appearance* of a foreclosure sale, there is no credible evidence that she did not understand the terms of the agreement.

In any event, the undersigned finds that Mrs. Stabler was not misled and that she understood that the agreement involved a foreclosure of the Ono Island property. As evidence she believed the sale was not a foreclosure, Mrs. Stabler relies heavily on item four of the agreement which states the parties will refrain *when possible* from using the word "foreclosure." Far from proving Mrs. Stabler's point, item four supports the opposite position. To require the parties to "refrain when possible" indicates that it will sometimes be necessary to use the word "foreclosure" because that is in fact what it was. That the parties would need sometimes need to use the word foreclosure, combined an agreement that *look*s like a foreclosure, leads to the

conclusion that there was no misunderstanding about the foreclosure issue.[5]

Mrs. Stabler also argues that the parties' discussion of the term "foreclosure" during the settlement negotiations was related only to her insistence that she would not agree to a foreclosure. This assertion lacks credibility for several reasons. First, it was disputed by the other parties to the settlement conferences. Furthermore, at the settlement conference, Mrs. Stabler herself helped to create the proposed order of sale which specifically states that the interest of Mr. Stabler is to be "foreclosed." Notwithstanding Mrs. Stabler's insistence to the contrary, her agreement to allow a division of the IRS to auction the property is further evidence that she understood that the agreement involved a foreclosure.

Other evidence also persuades the Court that Mrs. Stabler fully comprehended the terms of the settlement agreement, including the element of foreclosure, at the time she agreed to it. First, as Mrs. Stabler has proved through the course of this litigation, she is intelligent, well-educated, and very capable of articulating her position. She has held her own against opposing counsel. Thus, it is difficult to believe that she was would have either misunderstood or been misled about a matter so important to her. Second, since the settlement conference, Mrs. Stabler has sought to modify the agreement. For example, when Mrs. Stabler appeared for the evidentiary hearing, she remained willing to sell the property, with two new conditions—an additional $100,000 from the sale of the property and the use of a private auction company chosen by Mrs. Stabler to handle the sale. These new settlement demands further undermine the

---

[5]Moreover, avoiding words, such as "foreclosure," "Internal Revenue Service," "IRS" and "tax lien" does not make reality disappear. One cannot plausibly argue that there was no tax lien or that the IRS was not involved simply because the parties agreed to limit their use of those words. Likewise, limiting the use of the word "foreclosure" does not make the essence of the settlement agreement any less a foreclosure.

credibility of Mrs. Stabler's claim that she has refused to consummate the settlement due a misunderstanding of its terms.

**Conclusion**

For the foregoing reasons, the Court **OVERRULES** the objections raised by Mrs. Stabler and **ADOPTS** the Report and Recommendation of the Magistrate Judge. The motion to enforce the settlement agreement (Doc. 115) is **GRANTED**.[6] On or before **January 6th, 2008**, the plaintiff shall submit a proposed order of sale for the Ono Island property.

**DONE** this the 16th day of December, 2008

s/***Charles R. Butler, Jr.***
**Senior United States District Judge**

[6]Because the Court has concluded that the settlement agreement is due to be enforced, all other pending motions, including motions for summary judgment (Docs. 127, 133 & 135), motion to supplement (Doc. 141), motion to extend time (Doc. 142), motion to withdraw motion for summary judgment (Doc. 147), emergency motion for relief (Doc. 127) and motion to determine amount of mortgage (Docs. 129), are **MOOT**.